UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROYAL BENSON, M.D.,** *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | **CIVIL ACTION NO. H-04-04323** |
| | § | |
| **ST. JOSEPH REGIONAL HEALTH CENTER,** *et al*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiffs' Motion to Compel (Docket # 107) and Plaintiffs' Motion to Take Additional Depositions (Docket # 108). Subject to the limitations set forth below, Plaintiffs' motions are **GRANTED**.

**I.   Peer Review Documents**

Plaintiffs have moved to compel various documents relating to Defendants' peer review of physicians at Defendant St. Joseph Regional Health Center ("St. Joseph"). These documents include the American College of Obstetricians and Gynecologists' Voluntary Review of Quality Care report, hospital committee minutes, and peer review and privileging information regarding other physicians practicing at St. Joseph. Plaintiffs contend that these documents are necessary and relevant to both the prosecution of their antitrust claims and to their response to Defendants' immunity defense under the Health Care Quality Improvement Act (HCQIA). Conversely, Defendants argue that this Court should recognize a peer review privilege with respect to peer review documents concerning physicians other than Plaintiff Dr. Benson, and that such documents are irrelevant to Plaintiffs' claims.

In a case involving a federal cause of action with pendent state-law claims, such as this one, federal privilege law applies to all claims. *See, e.g.*, *Mem'l Hosp. v. Shadur*, 664 F.2d 1058, 1061

(7th Cir. 1981); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001); *see also* FED. R. EVID. 501.  Defendants seem to concede that no federal peer review privilege has been recognized in federal law, either by courts or by Congress.[1]  Rather, Defendants urge the Court to create a new peer review privilege.  Federal Rule of Evidence 501 authorizes federal courts to define new privileges by interpreting common law principles "in the light of reason and experience."  *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996).  However, evidentiary privileges must be strictly construed, in light of the "fundamental principle that the public . . . has a right to every man's evidence."  *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (internal quotations and citations omitted).  In *Jaffee*, for example, the Court recognized a new psychotherapist-patient privilege after finding that the privilege would serve a significant private and public interest, that the denial of the privilege would result in only a modest evidentiary benefit, and that all fifty states and the District of Columbia had enacted some form of the privilege.  518 U.S. at 11-12.

This Court declines to recognize a new federal privilege for peer review documents.  Defendants are correct that the physician peer review process is vital to the significant public interest in competent health care.  Defendants also accurately point out that peer review materials are inherently sensitive and confidential, and that protecting their confidentiality serves an important public interest by protecting the integrity of the peer review process.  The Court is sensitive to the fact that public disclosure of peer review documents could cause embarrassment to the physicians who are the subject of the reviews and might make physicians reluctant fully to participate in peer reviews.

---

[1] As Plaintiffs correctly note, the federal HCQIA creates only a limited privilege for peer review materials that are reported to the Secretary of Health and Human Services pursuant to the HCQIA's reporting requirements.  42 U.S.C. § 1137(b)(1); *see also Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80, 83-84 (M.D. La. 1996) (finding that the HCQIA "established confidentiality for information reported under the act, but did not establish confidentiality for peer review records or protect peer review records and materials from discovery and court subpoena").  Defendants do not allege that any of the documents requested by Plaintiffs have been reported under the HCQIA.

However, unlike in *Jaffee*, an essential evidentiary benefit will be lost in this case if a peer review privilege is recognized. An analysis of Defendants' treatment of other physicians in comparable proceedings is central to Plaintiffs' claims for antitrust violations and anticompetitive conduct. Evoking a new peer review privilege to keep Plaintiffs from accessing the peer review documents concerning other doctors at St. Joseph would prevent Plaintiffs from undertaking such an analysis. Not only would the adoption of a peer review privilege hinder Plaintiffs' ability to prosecute their claims in the case at bar, but it would obstruct the important public interest in open and fair competition for health services. The importance of allowing Plaintiffs access to the peer review materials outweighs the public interest in their nondisclosure.

Though the Fifth Circuit has yet to decide whether a peer review privilege should exist, the courts that have considered the issue have declined to create such a privilege. In *Memorial Hospital v. Shadur*, the Seventh Circuit upheld a district court's order compelling disclosure of peer review materials for third party physicians in a case involving an alleged conspiracy to restrain trade in violation of state and federal antitrust laws. 664 F.2d at 1063-64. As in the case at bar, the plaintiff in *Memorial Hospital* claimed that defendants implemented their plan to eliminate him as a competitor by manipulating the hospital's review proceedings. *Id.* at 1060. The court recognized that in such a case "the plaintiff's claim arises out of the disciplinary proceedings themselves and not some event or occurrence that exists independently of those proceedings," such as in a medical malpractice action. *Id.* at 1062. Thus, the records of these disciplinary proceedings, including peer review documents relating to other physicians, were essential to the plaintiff's antitrust claim. *Id.* at 1063. The court concluded that the strong public interest in the enforcement of federal antitrust laws counseled against the exclusion of the peer review documents through the recognition of a federal privilege. *Id.*

3

The Fourth Circuit similarly declined to recognize a peer review privilege in a case involving claims that a hospital's peer review functions were performed in a racially discriminatory manner. *Virmani*, 259 F.3d at 293. Noting the importance of promoting openness in medical peer review, the court also found that the peer review evidence was crucial to the plaintiff's comparison of the review proceedings in his case to those involving similarly situated physicians. *Id.* at 287-89. Importantly, the court also found that although the fifty states and the District of Columbia have recognized some form of medical peer review privilege, "in at least some states, [this] appears to have been based on the policy decision that the interest in promoting candor among medical personnel outweighs the interest in providing access to evidence in medical malpractice actions." *Id.* at 290. While a medical malpractice claim arises from actions occurring independently of the peer review process, a discrimination claim, like an antitrust claim, arises out of the peer review process itself. *See id.* at 290-91. Peer review documents are therefore vital to the prosecution of discrimination and antitrust claims, and the rationale behind the state peer review privileges does not apply in such cases. *See id.* at 291.

The opinions of other district courts in antitrust cases involving requests for peer review discovery are also instructive. *See Poliner v. Texas Health Sys.*, 201 F.R.D. 437, 438 (N.D. Tex. 2001) (holding that physician was not barred by any federal privilege from discovery of peer review materials); *Pickett v. Woodland Heights Gen. Hosp., Inc.*, 1997 WL 394822 at *2 (E.D. Tex. 1997) (finding that peer review records fell "beyond any medical peer review privilege because [plaintiff] alleges that defendants used the peer review process to stifle economic competition in violation of anti-trust statutes"); *Swarthmore Radiation Oncology, Inc. v. Lapes*, 1993 WL 517722 at *3-4 (E.D. Pa. 1993) (declining to recognize a federal peer review privilege and finding that the policies reflected in a state peer review privilege were "incompatible with the federal interest in fair competition embodied in the antitrust laws"); *Wei v. Bodner*, 127 F.R.D. 91, 99 (D.N.J., 1989)

(finding that "courts have consistently held these policies [of state peer review privileges] to be outweighed by the policies behind federal antitrust laws").

Defendants correctly note that the Fifth Circuit has recognized the important public interest in protecting the inherent confidentiality of peer review materials. *United States v. Harris Methodist Fort Worth*, 970 F.2d 94, 103 (5th Cir. 1992). In *Harris*, however, the Fifth Circuit explicitly stopped short of defining any federal peer review privilege. *Id.* Moreover, at issue in *Harris* was the reasonableness of the government's search of a hospital's records, which the court analyzed under the rubric of the Fourth Amendment. *Id.* at 101-103. The court's reasoning in *Harris*, then, is arguably not applicable to the issue of whether a court should adopt a new federal privilege under Federal Rule of Evidence 501. Other district courts in this circuit have reached the same conclusion. *See Pickett*, 1997 WL 394822 at *1 n.4 ("The assumption that *Harris* recognizes a medical peer review privilege seems debatable."); *Sabatier v. Barnes*, 2001 WL 175234 at *3 (E.D. La. 2001) (holding that "the weight of authority is that there is no peer review privilege under federal common law," and that *Harris* "does not change that conclusion").

In light of the centrality of the peer review documents to Plaintiffs' case, as well as the long line of federal cases declining to recognize a federal peer review privilege, the Court finds that the peer review documents held by Defendants are not privileged against discovery. Defendants are therefore ordered to produce the peer review documents requested by Plaintiffs. The Court is, however, cognizant of the sensitive nature of these documents and the need for appropriate restrictions to protect their confidentiality. Accordingly, prior to producing the records, Defendants may redact information that identifies or otherwise reveals the identity of patients or other physicians who are the subjects of the peer reviews. Additionally, Plaintiffs are ordered that any peer review discovery obtained will not be disclosed to persons other than the parties, their counsel,

5

the parties' retained experts, or the authors and/or recipients of the information. The protective terms of this Order may be modified by agreement of the parties or on further order of the Court.

## II. Market Share Documents

As discussed at the status conference on December 15, 2005, all documents relating to Defendants' market share are relevant and discoverable. To the extent that such information does not exist, Defendants must produce affidavits attesting to its non-existence.

## III. Electronic Discovery

Additionally, Defendants must produce a privilege log to Plaintiffs within thirty (30) days, specifying in detail any objections they may have to each of Plaintiffs' individual requests for discovery. Defendants may not refuse to produce all documents produced after April 4, 2002, on the doubtful presumption that all documents prepared after Dr. Benson requested a hearing under the Medical Staff Bylaws were necessarily prepared in anticipation of litigation. Rather, Defendants must raise their objections individually in the form of a privilege log, and the Court will analyze each document separately.

## IV. Additional Depositions

Plaintiffs are allowed to take ten (10) additional depositions. Each deposition is restricted to two (2) hours. Should Plaintiffs need additional time, they should specify the additional questions to be asked and/or identify the reasons that the initial two (2) hour deposition was insufficient.

**IT IS SO ORDERED**.

**SIGNED** this 22nd day of December, 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.