UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROYAL BENSON, M.D., *et al*, § | |
| § | |
| Plaintiffs, § | |
| v.  § | CIVIL ACTION NO. H-04-04323 |
| § | |
| ST. JOSEPH REGIONAL HEALTH § | |
| CENTER, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Limit the Court's Order on Plaintiffs' Second Motion to Compel and Request for Emergency Hearing (Docket # 165). As set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. Background

In a Memorandum and Order dated May 1, 2006, the Court considered Plaintiffs' Second Motion to Compel and held, among other things, that Plaintiffs are entitled to the patient charts referenced by the peer review files produced by Defendants. In their written briefs, and at a hearing before the Court on Plaintiffs' Second Motion to Compel, Defendants noted the burden and expense of producing the many patient charts associated with the peer review files. Defendants now assert that, after efforts to comply with the Order, they have become more fully aware of the "tremendous volume and scope of the patient charts implicated," and of the great burden and expense involved. Defs.' Mot. at 3. Defendants urge the Court to limit its previous Order, by restricting the number of patient charts that Defendants are required to produce, by allowing Defendants extra time to produce the charts, and by allowing Defendants to charge Plaintiffs the state-mandated fees associated with record production, which are generally charged to individuals when a records request is made.

## II. Cost Shifting

### A. Number of Patient Charts

The parties agree that there are 1,336 patient charts referenced by the peer review materials, which Defendants are required to produce under the Court's May 1 Order. As Defendants point out, these charts must be retrieved from a variety of mediums, including an off-site storage facility, a system of scanned records, and microfilm. Judging from a random sample of seven patient charts produced by Defendants, the charts range in length from approximately 80 pages to 120 pages. *See* Bonnie Schoonover, RHIT, Director of Medical Records at Defendant St. Joseph Regional Health Center, Decl. at 2-3.

The Court has previously recognized that patient charts underlying physician peer review are relevant and necessary to Plaintiffs' comparison of Defendants' peer review treatment of Dr. Benson to that of other physicians. While all of the patient charts may be relevant to this comparison, however, the Court cannot now conclude that access to all 1,336 patient charts is necessary for Plaintiffs to conduct such a comparison and adequately explore their theory of disparate treatment. Rather, Plaintiffs should be able to conduct a reasonable analysis and compare Dr. Benson's peer review treatment to that of other physicians with a representative sample of patient charts from each of the other peer-reviewed physicians. Particularly in light of the expense of producing each chart, the Court is not convinced that requiring Defendants to bear the burden of producing all 1,336 charts is warranted.

While the general rule is that the party responding to a discovery request should bear the cost, a trial court has discretion to shift the cost under Federal Rule of Civil Procedure 26(c), so as to protect the responding party from undue burden or expense. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("[T]he presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's

discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery."); *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) (recognizing a trial court's "considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case").

Here, the production of enough patient charts to allow Plaintiffs to reasonably compare Dr. Benson's and other physicians' peer review treatment does not constitute an undue burden. In light of the high cost of production and Plaintiffs' likely ability to make such a comparison with fewer than all of the charts, however, imposing the full expense of producing all 1,336 charts upon Defendants would be undue and unfair.

Accordingly, Defendants shall bear the entire cost producing the first 350 patient charts produced to Plaintiffs. These 350 charts will constitute approximately one fourth, or 26%, of the total number of charts referenced in the peer review materials, and they should provide Plaintiffs with an adequate sample from which to compare Dr. Benson's and the other physicians' treatment. The 350 charts shall include at least ten charts for each of the twenty-five physicians subject to peer review, and Plaintiffs may select which charts should constitute this group of 350. For all patient charts requested by Plaintiffs in addition to the 350 charts described above, Defendants shall bear half of the cost of their production, and Plaintiffs shall bear the other half of the cost – subject to the following discussion of redaction.

## B. Cost of Redaction

In addition to the large number of patient charts available, the process of redacting each chart also increases the cost of production. Defendants estimate, for example, that it will take approximately one hour of work to redact each chart. Plaintiffs contend that redacting the names of patients and physicians from each chart prior to production is unnecessary, and that they will

3

enter into an agreed order to protect the confidentiality of the patients and physicians whose names appear in the charts. Under the terms of such a protective order, Plaintiffs would be barred from disclosing any such information, and any charts introduced into evidence would be redacted prior to entering the public record. Plaintiffs also point out that redaction is in large part ineffective, as exemplified by the names of patients and physicians that were inadvertently not redacted from the seven patient charts that Defendants have already produced.

Patient charts are highly sensitive and confidential, and the Court will not order Defendants to produce the charts unredacted, even with a protective order in place. The Court is of the opinion, however, that such a protective order would provide an adequate safeguard against the disclosure of patient and physician identities, and the Court would strictly enforce the terms of such an order. Because Defendants could reasonably choose to produce the charts in unredacted form under a protective order, Plaintiffs should not bear the added expense of redacting the records. Accordingly, for each patient chart produced, including those produced as part of the initial group of 350 charts, and those produced in addition to the 350, Defendants shall bear the full cost of redaction.

*C. Conclusion*

For the first 350 charts produced, Defendants shall bear the entire cost and may decide whether or not to redact the charts prior to producing them. For all charts produced in addition to the first 350, Defendants may decide whether or not to redact the charts and shall separately calculate (1) the expense of retrieving and copying the charts, and (2) the expense of redacting the charts, if any. Defendants and Plaintiffs shall each bear one half of the cost of retrieving and copying these charts. Defendants shall bear the entire cost of redacting the charts, should they choose to redact the charts prior to production.

This cost sharing arrangement, while perhaps not ideal, will allow Plaintiffs access to as many patient charts as they wish to carry out their comparison of Dr. Benson's treatment with that of other physicians. At the same time, it will prevent Plaintiffs from bearing the avoidable expense of redaction, as well as save Defendants from shouldering what the Court finds to be an undue burden. The parties are strongly encouraged to work together to facilitate the production of the patient charts.

## III. Extension of Time

Finally, in light of the immense time and effort required to produce the patient charts, Defendants are entitled to additional time to comply with the Court's Order regarding production of the charts. Plaintiffs do not oppose Defendants' request for additional time. Accordingly, Defendants shall have until July 15, 2006 to produce the patient charts.

**IT IS SO ORDERED**.

**SIGNED** this 17th day of May, 2006.

*/s/ Keith P. Ellison*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT