UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROYAL BENSON, M.D. and BENSON OB/GYN CENTER, P.A., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-04-4323 |
| ST. JOSEPH REGIONAL HEALTH CENTER, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion to Alter or Amend Judgment and Motion to Amend Pleading (Doc. No. 356). For the reasons set forth below, Plaintiffs' motion is **DENIED**.

### I. BACKGROUND

For the sake of brevity, the Court hereby incorporates the "Background" section contained in its Memorandum and Order of March 22, 2007, with two modifications. First, the Court previously stated that the OB/GYN Department created the Ad Hoc Committee, when in fact the Credentials Committee created the Ad Hoc Committee. Second, the Court may have implied that all members of the Hospital's Medical Executive Committee ("MEC") were present at a discussion with Dr. Benson that took place on March 14, 2002, when in fact only the officers of the MEC were present (Drs. Ryan, Emmick, Sterling, and Patton).

Plaintiffs take issue with a number of facts omitted from the Court's recitation of background information in its March 22, 2007, Memorandum and Order. The Court acknowledges that it did not include every fact proffered by every party in the "Background"

section of its Order, but the relevant facts were included and the irrelevant facts were not. No further modifications will be made.

## II. RULE 59(e) STANDARD

Plaintiffs seek relief under Federal Rule of Civil Procedure 59(e), petitioning the Court to alter or amend its previous judgment. In the Fifth Circuit, to prevail under Rule 59(e), a party must establish (1) an intervening change in controlling law, (2) the availability of new evidence that was not previously available, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *In re Benjamin Moore*, 318 F.3d 626, 629 (5th Cir. 2002). *See also Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). Plaintiffs do not contend that there has been an intervening change in the law or that new evidence has become available, but rather that there were clear errors of fact that must be corrected. Specifically, Plaintiffs claim that the Court made clear errors of fact in ruling that Defendants are entitled to immunity under the Texas Medical Practices Act ("TMPA") and that Plaintiffs' antitrust claims do not survive summary judgment. These arguments will be addressed in turn.

## III. TMPA IMMUNITY

The TMPA affords immunity from civil liability for state law claims to peer review participants who "act[] without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to the person." *Tex. Occ. Code* § 160.010(a)(2) (Vernon 2004). There is a statutory presumption that participants acted without malice, *Maewal v. Adventist Health Sys.*, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth 1993, writ denied), so a plaintiff bears the burden of overcoming that presumption by clear and convincing evidence, *Monroe v. AMI Hosp. of Tex., Inc.*, 877 F. Supp. 1022, 1030-31 (S.D. Tex. 1994). Malice, for purposes of the TMPA, is defined as "knowledge that an allegation is false or

[] reckless disregard for whether the allegation is false." *Johnson v. Hosp. Corp. of Amer.*, 95 F.3d 383, 395 (5th Cir. 1996) (citing *Maewal*, 868 S.W.2d at 893). Thus, the Fifth Circuit has explained that, in order to overcome the TMPA immunity presumption, a plaintiff must show that a peer review participant knew that the allegations against the physician that led to his suspension or non-renewal were false, or acted with reckless disregard for the falsity of those allegations. *Id.*

The allegations that led to Dr. Benson's non-renewal were the concerns identified in the ACOG report. So in order to raise a fact issue as to malice, Plaintiffs must produce evidence that Defendants knew that the allegations in the ACOG report were false, or acted on them with reckless disregard for whether or not they were false.

A plaintiff can attempt to raise a fact issue with direct evidence of malice, or by demonstrating "inadequate investigation coupled with the presence of ulterior motives," *Poliner v. Tex. Health Sys.*, 2003 WL 2225567, at *15 (N.D. Tex. Sept. 30, 2003). In this case, Plaintiffs have attempted both showings.

### A. Direct Evidence of Malice

Plaintiffs, in their motion to amend or alter judgment, have identified several pieces of evidence that they believe constitute direct evidence that Defendants knew the allegations in the ACOG report were false, or acted on them with reckless disregard for their falsity. First, they argue that their expert, Dr. Victor Vines, opined that the ACOG conclusions were incorrect. Second, they maintain that ACOG reviewed a disproportionate number of Dr. Benson's charts. Third, they argue that, before the ACOG review, Defendants gave interviews to the ACOG reviewers in which they made false statements about Dr. Benson. Finally, they contend that

3

Defendants rescored charts belonging to other OB/GYNs after the ACOG review, but did not rescore any of Dr. Benson's charts. Each of these arguments will be examined.

First, Plaintiffs proffer Dr. Vines's expert report and vehemently argue that the Court was wrong to state that Plaintiffs did not submit evidence that ACOG's conclusions regarding Dr. Benson were incorrect. The Court admits that it overlooked Dr. Vines's testimony in its previous Memorandum and Order, but this can be explained by the fact that Plaintiffs do not appear to have cited Dr. Vines's testimony in their briefing on the TMPA immunity issue. Regardless, one paragraph of the Court's previous opinion may have over-emphasized the importance of the actual truth or falsity of the underlying allegations. Whether the allegations were, in fact, false is a separate and distinct question from whether *Defendants* knew that the allegations were false or acted in reckless disregard for whether or not they were false. So while the Court now acknowledges that Plaintiffs have indeed offered evidence, in the form of Dr. Vines's expert report, that ACOG's conclusions were false, it must conclude that this evidence is nevertheless insufficient to raise a factual issue as to whether *Defendants* knew that they were false or acted with reckless disregard for whether or not they were false. The Court is hopeful that this explanation alleviates any confusion caused by its previous Memorandum and Order.

The second piece of evidence that Plaintiffs maintain constitutes direct evidence of malice is the fact that ACOG reviewed a disproportionate number of Dr. Benson's charts. The ACOG team reviewed 111 patient charts, out of which 100 belonged to OB/GYNs. Sixteen of those 100 charts belonged to Dr. Benson. That was three charts more than were reviewed for any other OB/GYN, and ten charts more than were reviewed for sixty percent of the OB/GYNs included in the study. This evidence does not suggest to the Court, however, that Defendants knew that ACOG's findings based on those sixteen charts would be false. Nor does it suggest

4

that Defendants believed that the findings might be false, but acted in reckless disregard of that belief.  In fact, providing reviewers with a larger sample of charts for a particular physician could just as easily be an advantage to that physician as a disadvantage.  Thus, any disparity in the number of charts reviewed is not sufficient to create a fact question on the issue of actual malice.

The third piece of evidence cited by Plaintiffs as direct evidence of malice is that, before the ACOG chart review commenced, some physicians gave interviews to ACOG investigators in which they made allegedly false statements about Dr. Benson and his patient care.  As a result of these interviews, Dr. Benson became the subject of the "focused physician" section of the ACOG report, unbeknownst to Dr. Benson.  However, even if the Court assumes that all of the information provided to ACOG in these interviews was indeed false, it is not persuaded that Plaintiffs have provided enough evidence for a jury to conclude by a clear and convincing standard that those individuals who gave the interviews *knew* that the information they provided was false.  Nor, more importantly, have they provided sufficient evidence that those who eventually voted to non-renew Dr. Benson knew, or even suspected, that the allegations in the "focused physician" section were false.  The Court does not decide, were the evidentiary standard a mere preponderance, whether this evidence would be sufficient to raise a fact question regarding malice.  But here, a presumption operates that Defendants acted without malice, and Plaintiffs must overcome that presumption by clear and convincing evidence.  For that statutory presumption to serve its purpose, a plaintiff must be held to a higher evidentiary burden at the summary judgment stage as well.  As a result, the Court must conclude that the interviews and "focused physician" section of the ACOG report do not raise a fact issue regarding actual malice.

5

Finally, the fourth piece of evidence offered by Plaintiffs as evidence of malice is that, after the ACOG review, Defendants "rescored" several charts belonging to other OB/GYNs but did not "rescore" or reexamine Dr. Benson's charts. Plaintiffs argue that this demonstrates that Defendants knew the ACOG scores were incorrect, but consciously chose not to correct Dr. Benson's scores so that they could be used against him. While it is true that Defendants reevaluated and applied a more favorable rating to eighteen charts that had been reviewed by ACOG, this was merely eighteen out of the 111 total charts reviewed. On its face, the reevaluation of a relatively small percentage of charts does not indicate that Defendants knew that ACOG's conclusions were uniformly incorrect. Nor does it indicate that the ACOG conclusions were so consistently flawed that failure to reevaluate each and every chart constitutes reckless disregard. Quite the contrary, that Defendants chose not to alter 84% of the charts could be interpreted as significant validation of ACOG's scoring. Again, the Court does not express an opinion as to whether this evidence would be sufficient to raise a question of fact were the applicable standard a mere preponderance, but it is not sufficient to raise a question of fact regarding actual malice where a clear and convincing standard applies.

### B. Inadequate Investigation Plus Ulterior Motives

Plaintiffs also argue that they have raised a question of fact regarding actual malice by demonstrating an "inadequate investigation coupled with the presence of ulterior motives," *Poliner*, 2003 WL 2225567, at *15. The Court is persuaded that Plaintiffs have adduced sufficient evidence to establish ulterior motives by clear and convincing evidence, but clear and convincing evidence of inadequate investigation is lacking.

Plaintiffs first attempt to establish an inadequate investigation through word play. They argue that Defendants have admitted that they did not conduct an "investigation," because if they

6

had, then the Hospital by-law protections would have been triggered. But the word "investigation" as used in the by-laws is a term of art that does not necessarily have the same meaning as an investigation in the colloquial sense. The Court believes that the word "investigation" as it is used in case law does not require the equivalent of an "investigation" under the by-laws.

Second, Plaintiffs argue that an inadequate investigation is established by the fact that the MEC did not conduct their own review of the ACOG findings. The Court believes, however, that the MEC was entitled to rely on the ACOG report and was not required undertake an additional investigation of the ACOG investigation. It was not unreasonable or inadequate for the MEC to rely on the findings of external reviewers. Indeed, if Plaintiffs do believe that local physicians had ulterior motives vis-à-vis Dr. Benson, the use of external reviewers would be to Dr. Benson's advantage.

Third, Plaintiffs maintain that there was an inadequate investigation because Dr. Benson was not told that he was the "focused physician" and was not given an opportunity to respond to the allegations against him. Not being given the opportunity to address the charges against oneself traditionally raises due process concerns, but the case law requires only that the Hospital conduct an adequate *investigation*—not necessarily a hearing subject to all due process guarantees. Thus, the fact that Dr. Benson was not given the chance to dispute the ACOG report before the vote to non-renew his privileges does not amount to clear and convincing evidence that the investigation itself was inadequate.

Finally, Plaintiffs attempt to demonstrate that the investigation was inadequate with an affidavit by Dr. Garth Morgan that was not part of the summary judgment record. (Pls.' Mot. Alter Ex. D.) Defendants object to the introduction of this new evidence at this stage of the

proceedings. The Court notes Defendants' objection, but will consider the affidavit. Dr. Morgan testified that, prior to the ACOG review, he was told by a fellow physician at the Hospital that Dr. Benson "would soon be facing lots of trouble and possibly losing his privileges . . . ." (Pls.' Mot. Alter Ex. D.) Dr. Morgan also testified that he was told "St. Joseph's, and several physicians at the Brazos Valley Women's Center . . . were planning on making sure that Dr. Benson's privileges were not renewed" and that "they 'had something' on Dr. Benson and that they intended on removing him from practice privileges at St. Joseph's." (Pls.' Mot. Alter Ex. D.) This testimony, however, goes to Defendants' ulterior motives, rather than the adequacy of the investigation. Thus, Dr. Morgan's affidavit is not sufficient to demonstrate an inadequate investigation.

In sum, Plaintiff has not produced sufficient evidence to permit a jury to conclude by a clear and convincing standard that Defendants' investigation of Dr. Benson was inadequate. Plaintiff has also failed to produce sufficient direct evidence of actual malice to raise a fact question. Thus, the Court's previous ruling stands, and Plaintiff's motion to alter or amend this portion of the March 22, 2007, Memorandum and Order is **DENIED**.

## IV. ANTITRUST

In its previous Memorandum and Order, the Court granted Defendants' motion for summary judgment on Plaintiffs' antitrust claims. Plaintiffs now argue that the Court committed a clear error of fact in ruling that Dr. Benson failed to produce evidence of an injury to competition in general. The Court is of the opinion that Plaintiffs' arguments on this topic were adequately addressed in its prior ruling, however, and will not rehash them here.

For the first time, Plaintiffs argue that Dr. Benson was offering three procedures not offered locally by any other physician. Aside from the tardiness of this argument, the fact

8

remains that anyone seeking such procedures could, at all times, still be treated by Dr. Benson. That additional costs might be involved for that limited subclass of persons who wanted to be treated by Dr. Benson but whose insurance carriers had exclusive arrangements with St. Joseph does not establish a market-wide anti-competitive effect. As the Fifth Circuit explained in *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, not only could such patients still use Dr. Benson at higher out-of-network prices if they desire, but, critically, the purchasers of health care plans are free to choose a plan without an exclusive St. Joseph arrangement. 123 F.3d 301, 311 (5th Cir. 1997). Thus, patient choice is not adversely affected, and the fact that only a small subclass of the market might be facing increased prices does not suggest to the Court an injury to competition in the market as a whole.

The Court's previous ruling on Plaintiffs' antitrust claims stands, and Plaintiffs' motion to alter or amend this portion of the March 22, 2007, Memorandum and Order is also **DENIED**.

## V. MOTION FOR LEAVE TO AMEND

Finally, Plaintiffs seek leave to amend their complaint to assert a cause of action for breach of contract arising from the MEC's October 2001 decision to reduce Dr. Benson's privileges to six months after previously approving his application for a two-year period. Previously, Plaintiffs argued that this decision constituted a "professional review action" for purposes of federal immunity analysis under the Health Care Quality Improvement Act ("HCQIA"), and the Court considered and rejected this argument. Allowing the Plaintiffs another bite at the apple to assert a different legal theory at this stage of the litigation would cause undue prejudice to Defendants. In addition, there has been undue delay in seeking this leave to amend because the document that reflects this decision was produced to Plaintiffs on September 30, 2005. Furthermore, leave to amend the complaint would be futile because the

9

breach of contract action is barred by the four year statute of limitations.  *See Tex. Civ. Prac. & Rem. Code* § 16.004 (Vernon 2004).  Thus, Plaintiffs' motion for leave to amend is **DENIED**.[1]

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Alter or Amend Judgment is **DENIED**.  Plaintiffs' Motion to Amend Pleading is also **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 22nd day of August, 2007.

                                KEITH P. ELLISON
                                UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**

---

[1] Plaintiffs also object, though without a motion, to new evidence that Defendants attached as Exhibits in response to Plaintiffs' Motions.  The Court did not consider those Exhibits and they are STRICKEN.